## Bieber *v.* Kutztown Borough, Appellant.

*Road law—Widening street—Change of center line—Evidence—Ordinance —Borough.*

Where a borough ordinance widening a street is so vague in its language as to leave it uncertain whether the center line of the street was changed or not, but the evidence shows that the borough and its officials, and viewers appointed in damage proceedings, considered the line as unchanged and acted on that supposition, a finding by the court below that the line was in fact unchanged will not be reversed by the appellate court.

Argued Nov. 18, 1904. Appeal, No. 181, Oct. T., 1904, by defendant, from decree of C. P. Equity Docket 1903, No. 840; on bill in equity in case of William Bieber v. Kutztown Borough. Before RICE, P. J., ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity for an injunction.

ENDLICH, J., filed the following opinion:

1. The borough of Kutztown is a borough duly incorporated and subject to the provisions of the general borough law of April 3, 1851, P. L. 320, and its supplements.

2. The plaintiff is a resident of said borough and the owner

of two two-story brick houses and a tract of land consisting of building lots, fronting for a distance of about 570 feet upon the eastern side of Noble street, in said borough.

3. Noble street was originally laid out according to what is known as the "Fisher plan," which is not a plot of the entire borough, but was adopted by the same in 1859. The center line of the street was fixed at its intersection with Sander alley by a stone known as the "Fisher stone," and at the southern limits of the borough by a hole drilled in the rock and so described on the plan.

4. In 1885 a number of houses had been built on opposite sides of a portion of Noble street, fifty-four feet apart, not, however, equidistant from the center line according to the Fisher plan. Since 1884 there have been disputes about the proper location of the building line on the western side of the street, the plaintiff repeatedly protesting against the adoption of the one followed in the erection of houses on that side and at least on one occasion threatening legal proceedings.

5. On July 3, 1885, upon due notice to the property holders, the borough council passed, and on July 13, 1885, the chief burgess approved, the following ordinance " to widen and lay out that portion of Noble street between Sander alley and the southern limits of the borough : "

"SECTION 1. Be it enacted and ordained . . . . that that part of Noble Street . . . . be widened and laid out to the width of 54 feet . . . . as follows, to wit : Beginning at a corner in the center of Sander Alley marked by a planted stone, so called the 'Fisher stone,' at said street and running thence by lots lying on the east side of said street . . . . and lots lying on the west side . . . . south 22 degrees, east 2106$\frac{86}{100}$ feet to a point in the center of a public road running along the southern limits of said borough of Kutztown.

"SEC. 2. Be it ordained . . . . that all ordinances or parts of ordinances in conflict herewith be and the same are hereby repealed. "

. 6. Prior to the passage of this ordinance stakes had been driven along the properties fronting on Noble street designed to indicate the curb lines thereof as proposed to be widened ; . the lines marked by said stakes coinciding, not with the lines of a street fifty-four feet wide with a center line conformable

to the Fisher plan, but with the line now contended for by the borough.

7. After the passage and approval of the ordinance, proceedings were instituted by the borough to No. 3 November sessions, 1885, court of quarter sessions of Berks county, for the assessment of damages; the petition averring as follows:

" That that part of Noble Street . . . . beginning at a corner in the center of Sander Alley, marked by . . . . the 'Fisher Stone' at said street and ending at a point in the center of a public road . . . . has been of the width of    feet. That public necessity and convenience requires that the said street . . . . be widened and laid out to public use to the width of 54 feet, etc. "

Whereupon viewers were appointed and a view had. At the time of the view, the stakes mentioned in the next preceding finding and marking the supposed curb lines of the street as widened were in the ground. No damages were awarded. The report was confirmed absolutely January 13, 1886. The draft attached to it indicates an existing " center stone " at the intersection with Sander alley as one of the termini of the center line of Noble street—the " Fisher stone," which was then in its original place and was the only stone that could be meant.

8. In 1886, in pursuance of an opening order issued from the Q. S., part of Noble street was opened and the curb lines of the remainder south of plaintiff's property marked by stakes by the borough supervisor; the lines followed by him being substantially those now contended for by the borough, and placing the center line of the street midway between the front of the Bieber residence as marking the building line on the eastern, and the Bloch house as marking the building line on the western side according to a survey made by the borough surveyor Humbert.

9. On September 10, 1897, the borough council by resolution, not submitted to the chief burgess for approval, directed an engineer, Charles F. Sander, to prepare a map of the borough, and on February 17, 1898, by a similar resolution approved the map by that time prepared by him. It has been kept hanging for public inspection in the council room. Upon this (the Sander) survey the center line of Noble street is virtually conformed to that of the Fisher plan.

10. In 1897, also, when plaintiff was about to build the two houses referred to in the second finding of fact, and applied to the borough council (of which at the time he was a member) for the proper building line, Sander was instructed by the council to give him the proper line; and Sander thereupon gave plaintiff the building line in conformity with the Sander survey which he was then preparing. And the houses were placed accordingly.

11. On April 6, 1900, the borough council adopted a resolution, not previously advertised nor submitted to the chief burgess for approval, recognizing the Humbert survey (see findings, No. 8) as determining the center line of Noble street, whereby the Bieber residence and the Bloch house mark the opposite building lines thereof.

12. In August, 1900, an engineer, M. M. Dreibelbis, made a survey at the instance of the borough and took up and replaced the Fisher stone at its present location, $4\frac{1}{2}$ inches away from where he found it.

13. On or about April 14, 1903, written notice was served on plaintiff by the borough through its chief burgess to set curbs along his property fronting on Noble street according to the line thereof by the Humbert survey, and upon his refusal and thirty days' failure to do so, proceeded, according to the terms of the notice, to do so itself, with the purpose of charging him with the cost thereof.

14. The opening of the street to the eastern curb line of the Humbert survey will encroach upon the plaintiff's land along its entire length an average of about two feet beyond the curb line, as indicated by the Fisher plan or the Sander survey.

15. There are several buildings erected since 1885 upon the western side of Noble street opposite the property of plaintiff, all of them substantially conforming to the lines of the Humbert survey.

## DISCUSSION.

It may be well to discuss the questions arising in this case before formulating the legal conclusions which seem required by the facts found.

When the ordinance of July 13, 1885, declared the purpose of widening and laying out at the width of fifty-four feet Noble

street, a street already located and in existence, it could hardly be understood as intended nor could it well be effective to change the location of the street by disturbing its established center line. It necessarily meant an extension of the breadth of the street equally to the north and south of that line as it then existed. And especially must this be so in view of the mention of the Fisher stone which marked the one terminus of that line. Upon the familiar principle, also, which gives to calls for monuments upon the ground an effect overriding calls for courses and distances, this explicit reference to the Fisher stone renders the words "South 22 degrees east" of trifling, if any, significance. Without moving the Fisher stone from its then location, or ignoring it, the plaintiff's case does not appear to be helped by reference to this bearing. And, of course, the subsequent removal of the stone cannot at all affect the question here involved. Nor, in view of the express reference to the Fisher stone, is it of controlling import that before the passage of the ordinance there had been some confusion in the building line observed by successive builders along the street, some on the one side keeping twenty-seven feet away from the Fisher center line, others on the opposite side coming closer to it. Perhaps but little less unimportant is the fact that, before the passage of the ordinance and at the time of the view, the curb lines of the street as supposed to be contemplated were marked by stakes upon the ground. The function of the viewers was not to lay out the street or determine its curb lines. They had only to do with the assessment of damages: Alley in Kutztown, 2 Woodw. 373, 375. If they were misled by the marks erroneously put upon the ground by the borough officials, that might have constituted an objection to their award. But it could not make that the lawful line of either side of the street which was not its lawful line according to the terms of the ordinance. Nor by any of these things did the plaintiff, in the absence of evidence that he had something to do with causing the mistake, become estopped by it. True, he saw the stakes there, but he could not ascertain that they were wrong or how far they were wrong, except by having a survey made. Indeed, it has taken twenty years of disputing back and forth, three or four different surveys, and a judicial trial to ascertain the fact and extent of the mistake made. Certainly a party is not affected with notice of a fact so obscure;

see Rhode v. Neff, 1 Woodw. 477. Again, the circumstance that the borough supervisor, in attempting partly to carry out the opening order issued to him from the Q. S., continued the error made in the original marking of the lines of the street is incapable of concluding the plaintiff, when there is nothing to show that the latter was in any way directly and personally concerned in the matter. So far as the right of the borough or its officers subsequently to change the location of the street to its correct lines is concerned, and therefore as regards the rights of property holders who have built upon their properties fronting on the street according to the lines upon which it was there actually opened, it may be that the borough is concluded by what has been done; nor might the correctness of the location of the street be a legitimate subject of inquiry in case of an obstruction of any portion of it as opened to the public use; see Holden v. Cole, 1 Pa. 303 ; McMurtrie v. Stewart, 21 Pa. 322; Furniss v. Furniss, 29 Pa. 15 ; Clark v. Com., 33 Pa. 112; Van Buskirk v. Dawley, 91 Pa. 423 ; Com. v. Dicken, 145 Pa. 453; Hancock v. Wyoming Boro., 148 Pa. 635 ; Brewer v. Sullivan Co., 199 Pa. 594, 596. But when it comes to the opening of a street to its full width from curb to curb, which has not been theretofore so opened, by requiring a property holder to curb along vacant lots belonging to him and fronting upon the street, it seems very clear that the line of the street there controlling as to both parties is the lawfully established line, not another line not as yet actually existing, but indicated by what may have been previously done accidentally or mistakenly. If it is deemed necessary by the borough authorities, either to relocate the street upon the lines originally contemplated, or to adapt its legal lines to its actual location, there seems to be but one method of so doing : viz. by ordinance duly passed, upon which proceedings may be based for the purpose of compensating, in the one case the property holders misled by the erroneous location, or in the other the property holders from whom additional land will have to be taken. Even the Act of May 22, 1883, P. L. 39, would not seem to furnish a method of accomplishing the purpose, in so far as it involves the pushing of the curb line farther on to the property of plaintiff: Camp v. Port Allegheny Boro., 1 Pa. Dist. Rep. 328. But one thing is sure, that in no event can the change be made by mere resolution of the

council : Gilmore v. Connellsville Boro., 15 W. N. C. 342. Hence no effect can be given in this case to either the resolution of September 10, 1897 (see findings, No. 9), nor that of April 6, 1900 (see findings, No. 11), in so far as any change of actual or legal location may have been involved in the one or the other. The lawful lines of Noble street must be understood to be those established by the ordinance of July 13, 1885. The rights of the parties in this suit must be tested by reference to them. This is all the more manifest when it is remembered that sec. 3, cl. vii., Act of April 3, 1851, P. L. 320, 1 Purd. Dig. 247, pl. 158, makes it the duty of the borough to prepare and keep for public inspection, "a draft or plan of the roads, streets, lanes, alleys and courts opened or laid out, with every explanation necessary to a full understanding of the same ; " that the defendant borough did have prepared and since the beginning of 1898 kept in its council room (which is perhaps not a strict, but doubtless for present purposes a sufficient, compliance with the statutory requirement) such a draft or plan, namely, the Sander survey (see findings, No. 9) ; that in 1897, at the council's direction the engineer then preparing it furnished to plaintiff the line upon which the houses he was about to build and did build were to be and were placed ; and that this building line, as well as that indicated by the Sander survey, thereafter approved and hung up for the inspection of the public, coincides with the plaintiff's present contention and is inconsistent with that of the borough.

It is urged, however, on behalf of the latter, that this is not a case for equitable relief ; that the threatened action of the borough, if unlawful, will constitute a simple trespass ; and that for its redress the plaintiff has an adequate legal remedy. It is impossible to concede this proposition. The borough purposes not only to encroach upon plaintiff's land, but to subject him to litigation for the recovery of the cost of setting curbs. In no form of action at law could he be compensated for the entire injury thus likely to be sustained by him, consisting in the deprivation of his land, the encumbrance of his remaining property by lien and the expense of defending against the borough's claim for reimbursement, etc. The decision in Gilmore v. Connellsville, supra, relied on by defendant, is not in this particular in point. A question there arose, as also in

Camp v. Port Allegheny, supra, whether the wrong done or threatened to plaintiff by an unlawful taking of or attempt to take his property could be redressed or restrained by the court of Q. S. under sec. 22, act 1851, and its supplement of May 22, 1883; and it was held that it could not. On the other hand, it is clear under Boro. of Verona's App., 108 Pa. 83, Dorrance v. Dorranceton Boro., 181 Pa. 164, and similar cases, that where a borough attempts to proceed in the locating, opening or widening of a street without having secured to itself the necessary authority to do so, under void municipal legislation, or contrary to law, it may at the suit of a property holder likely to be injured thereby be restrained in equity. But it must not be forgotten that in equity a decree is never a matter of right, but of grace, resting in the sound discretion of the chancellor in view of the whole situation: Penna. R. R. Co. v. Ry. Co., 184 Pa. 227, 237. Nor will he, in granting, withholding or formulating a decree, overlook the rights and interests of the public in the subject-matter and results thereof; see R. R. Co. v. Lippincott, 86 Pa. 468, 481; Heilman v. Ry. Co., 175 Pa. 188, 199; or the injury consequent upon it to third parties necessarily affected over whom the plaintiff has no superior equities; see Maxon v. Berkeley, etc., Soc., 59 L. J. Ch. 524. It is manifest that a decree for a permanent absolute injunction forbidding the borough of Kutztown forever to take the two feet of plaintiff's property here in dispute and for a return to the Fisher lines might result in extreme inconvenience to the borough, to the public, and to other property holders upon Noble street. It may be that the street ought speedily or at some future time to be opened to the full width of fifty-four feet, and that it would involve a serious disarrangement of the plan upon which the borough is presently laid out and building up, as well as a much heavier expense to it and a far greater hardship upon other property holders, to adhere, in so doing, to the Fisher lines, than to move the center line closer to plaintiff's property. The power of the borough by proper legislation and proceedings to make such a change and to appropriate as much of plaintiff's property as shall be needful to carry it out, is undoubted. The plaintiff's right is to insist upon a legal exercise of that power and upon just compensation. A decree such as is prayed for in his bill would go beyond his rights and the reasonable

necessities of the case.    Both will be fully served by enjoining the borough from proceeding with its declared purpose until by due and lawful legislation the location of Noble street as established by the ordinance of July 13, 1885, shall have been changed and the borough have become entitled to appropriate the land in dispute as part of said street.    Such a decree will conform to that entered by the Supreme Court in Boro. of Verona's App., 108 Pa. 83, and will protect the rights of all concerned with a minimum of inconvenience to each.    The costs, of course, will have to fall on defendant.

### CONCLUSIONS OF LAW.

(*a*) The lawful center, curb and building lines of Noble street are those established by the ordinance of July 13, 1885, conforming to the Fisher plan and the Sander survey.

(*b*) The location of Noble street by the borough authorities to the extent that it departs from those lines was erroneous and unlawful, and is not binding upon the plaintiff.

(*c*) The resolution of April 6, 1900, recognizing the Humbert survey as controlling the lines of Noble street, as actually opened or staked off, is ineffectual to establish the same as its lawful location or as indicating the lawful center, curb or building lines of said street.

(*d*) The plaintiff is not estopped from asserting the unlawfulness of the present location of Noble street or resisting, because of the same, the attempt of the borough to compel him to curb along his property according to the lines actually marked upon the ground but conflicting to his prejudice with those called for by the ordinance of July 13, 1885.

(*e*) Neither has the borough any right to enter upon plaintiff's property and set curbs upon the same according to a line east of the lawful eastern curb line of said street according to its legal location by virtue of the ordinance of July 13, 1885, or to charge him with the cost of such work.

(*f*) It is unnecessary for the protection of plaintiff's rights in the premises to make, and he is not, therefore, entitled to, a decree requiring the borough to go back to the Fisher line of Noble street or to permanently enjoin a departure therefrom.

(*g*) But the borough having declared its intention to enter upon plaintiff's property, set curbs upon the same according to

a line east of the lawful eastern curb line of said street according to its legal location and thereby without authority of law and without making compensation to appropriate a part of plaintiff's property and to subject him to further demands for the cost of such curbing and to litigation in defense of his rights, the plaintiff is entitled to a decree enjoining the borough, its officers, representatives, agents, servants and employees from entering upon his land for the purpose of setting, and from setting or causing to be set, any curbs thereon according to the lines indicated by the Humbert survey, or according to any lines except those indicated by the Fisher plan and the Sander survey, until by ordinance duly and lawfully adopted, passed and approved, and by such other proceedings as may be competent and necessary according to law, the said borough shall have changed the legal location and lines on Noble street and conformed the same to the location and lines it shall prescribe as the lawful ones, and shall have entitled itself to enter upon plaintiff's property for the purpose aforesaid.

(*h*) The costs of this proceeding are to be paid by defendant.

And now, February 20, 1904, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision, and to give notice to the parties or their counsel, sec. reg.

*Error assigned* was the injunction order of the court.

*C. H. Ruhl* and *J. H. Marx*, for appellant.—Where a street is opened or widened by proceedings duly had according to law, the monuments placed upon the ground by the official opening or widening the same fix its location; and if the monuments so placed upon the ground do not conform to the lines of the street, as returned by the viewers in their report to the court from which the order issued, the monuments and not the description in the report determine its true location; a fortiori, where the description in the report of viewers is vague and uncertain, or becomes so because of the variations of the magnetic needle, the lines of the streets as marked when it was opened fix its true location : Holden v. Cole, 1 Pa. 303 ; Com-v. Plymouth Twp., 19 Pa. Superior Ct. 408 ; Boyd v. Negley, 53 Pa. 387 ; Kopf v. Utter, 101 Pa. 27.

*Isaac Hiester*, with him *D. Nicholas Schaffer*, for appellee,—

Where an ordinance to widen a street does not direct a change in the course of the street, it is presumed that the original center line is preserved.

Where an ordinance to widen a borough street does not provide for a change in the course of the street, the unauthorized or mistaken act of the borough surveyor in indicating by stakes a new course of the street before the passage of the ordinance does not have the effect of changing the course of the street and the location of its centre line.

A landowner is not estopped from objecting to a proposed unauthorized encroachment on his land in the widening of a street by the fact that other landowners have made improvements to correspond with the unauthorized lines unless it appears that the objecting landowner knew that the lines encroached on his land and has acquiesced therein : Waters v. Phila., 208 Pa. 189.


OPINION BY MORRISON, J., March 14, 1905:

A very careful examination of the bill, the evidence and the findings of fact, conclusions of law and opinion of the learned judge below convinces us of the correctness of his decision. And in view of the very thorough and able manner in which he has considered the whole case, it is doubtful if anything profitable can be added in support of his decree.

The borough of Kutztown was duly incorporated and made subject to the provisions of the general borough law of April 3, 1851, P. L. 320 and its supplements.

The plaintiff is a resident of said borough and the owner of two two-story brick houses and a tract of land consisting of building lots, fronting for a distance of about 570 feet upon the eastern side of Noble street in said borough. This street was originally laid out according to what is known as the " Fisher plan," which was adopted in 1859. The center line of the street was fixed at its intersection with Sander alley, by a stone known as the " Fisher stone," and at the southern limits of the borough by a hole drilled in a rock, and so described on the plan. The street was originally laid out and opened fifty feet wide. By ordinance of July 3, 1885, it was ordained, " that that part of Noble Street. . . . be widened and laid out to the width of fifty-four feet as follows, to wit:

Beginning at a corner in the center of Sander alley marked by a planted stone, so called the " Fisher stone,"at said street and running thence by lots lying on the east side of said street. . . . and lots lying on west side. . . . south, 22° east, 2,106.36 feet to a point in the center of a public road running along the southern limits of said borough of Kutztown."

The whole contention in this case arises over the question of the true interpretation of this ordinance.    The plaintiff contending that it did not change the original center line of Noble street, as it was fixed when the street was first laid out and opened.    On the other hand, the representatives of the borough contend that notwithstanding the commencement of the center line of the street at the original stone, yet the effect of the ordinance was to establish the center line easterly from the original location so that in front of the plaintiff's premises, the easterly line of the street, when opened in pursuance of said ordinance, would encroach upon the plaintiff's premises nearly two feet, and would pass through his brick buildings about that distance from their fronts.

The learned court upon elaborate findings of fact (which are not excepted to) found as a matter of law and fact that the center line of said street, as established by the ordinance of July 3, 1885, was precisely the same as it had been from the establishment of the street.    In other words, that the effect of the ordinance was simply to widen the street to fifty-four feet by taking two feet from the lots on both sides of the street. That is, measuring twenty-seven feet from the Fisher line, east and west.    If the line is to be established as contended for by the Borough, the front of plaintiff's brick buildings will be nearly two feet in the street.    But if the center line of the street is maintained as it always has been, then the plaintiff's brick houses are practically on the line of the street.

After this ordinance of July 3, 1885 went into effect, viewers were appointed to view and assess the damages caused by the widening of the street.    The petition by the borough for the appointment of these viewers, among other things, contained the following:  " That public necessity and convenience requires that the said street be widened and laid out to public use to the width of fifty-four feet."    The viewers acted and made their report and awarded no damages to the plaintiff.    We

think the language above quoted and the action of the viewer furnished very strong evidence that the borough, or its representatives, at that time, did not construe the ordinance as changing the center line of Noble street, because it is not reasonable to suppose that no damages would have been awarded to the plaintiff, if it was understood that two feet in depth of the front of his buildings was to be cut off by the street line.

On September 10, 1897, the borough council, by resolution, directed an engineer, Charles F. Sander, to prepare a map of the borough, and on February 17, 1898, the council, by resolution, approved the map by that time prepared by Sander. This map was thereafter kept hanging for public inspection in the council room. Upon this survey the center line of Noble street was made to conform to the original line, the Fisher plan.

In 1897 when plaintiff was about to build the two brick houses referred to, he applied to the borough council for the proper building line, and Sander was instructed by the council to give him the line; and Sander thereupon gave the plaintiff the building line, in accordance with the Sander survey which he was then preparing. And the houses were placed accordingly.

The above circumstances furnish very strong evidence that the present contention of the borough, that the ordinance of 1885 changed the center line of Noble street, is an afterthought. At best the said ordinance is not clear, as is shown by its reading and by the different views taken as to its effect. We quite agree with the learned court that the borough has power to change the center line of the street. But when that is done it should be by an ordinance which is clear and not susceptible of reasonable doubt as to its meaning. If this street is to be so changed that it will encroach upon the buildings of property owners along the respective sides, they will clearly be entitled to damages and, therefore, it is necessary that the ordinance should be so clear and precise that all interested parties will have notice, and that the lines of the street can be accurately fixed and the damages ascertained and assessed with reasonable certainty.

It is earnestly contended by the learned counsel for appellant, that a line run from the " Fisher stone " south 22° east, 2,106.36 feet to a point in the center of a public road

running along the southern limits of the borough, places this point about three feet east of the hole drilled in the rock as originally fixing the center line of Noble street. The learned court below did not regard the variation as of much importance. In this view we concur. It is not at all peculiar that a surveyor running this line in 1885 might, by carelessness, imperfect instruments, the variation of the needle or by all of these things combined, end his line three feet east of the original hole in the rock. The fact that he fixed no other monument but simply ended at a point, in our opinion, furnishes strong evidence that he ended his line at the said hole, or so near thereto that he deemed it unimportant and, therefore, did not fix any other monument upon the ground. This view is strengthened by the fact that the other end of the line was not changed at all.

But it is unnecessary to further discuss the questions raised, as we are entirely satisfied with the decree of the court below, and the reasons of the learned judge in support thereof.

The assignments of error are all dismissed and the decree is affirmed ; and it is further ordered that the appellant pay the cost of this appeal.

PORTER and HENDERSON, JJ., dissent.